**MONTANA–DAKOTA UTILITIES CO., A DIVISION OF MDU RESOURCES GROUP, INC., Appellee and Cross–Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF the STATE OF NORTH DAKOTA and Linda Tinjum, Appellants and Cross–Appellees.**

Civ. No. 880055.

Supreme Court of North Dakota.

Nov. 8, 1988.

---

**5.** *See* footnote 2.

William P. Pearce (argued) of Pearce & Durick, and Cynthia J. Norland (appearance) of MDU Resources Group, Inc., Bismarck, for appellee and cross-appellant.

Illona A. Jeffcoat–Sacco and Lynn L. Schloesser (argued) of Public Service Com'n, Bismarck, for appellant and cross-appellee Public Service Com'n of the State.

Myer R. Shark (argued) of Myer Shark Law Office, Fargo, for appellant and cross-appellee Linda Tinjum.

VANDE WALLE, Justice.

During February 1986, Montana–Dakota Utilities Co. (MDU) filed an application with the North Dakota Public Service Commission (PSC) to increase the rates for electric service to its North Dakota customers. The initial application requested additional revenue of $11,097,000, but following the PSC hearing on the application the request was ultimately reduced to $8,343,000. The PSC issued an order authorizing a rate increase yielding additional annual revenue to MDU of $4,378,000. From that order MDU appealed to the district court which, following a hearing, entered a judgment affirming in part and reversing in part the PSC's action on the rate request. The PSC has appealed to this court from that part of the district court judgment reversing the PSC's disallowance of part of MDU's expenditures for coal purchased from its wholly owned subsidiary, the Knife River Coal Mining Company (Knife River). MDU has cross-appealed from that part of the district court judgment which affirmed the PSC's restatement of MDU's unamortized investment-tax-credit balance. We reverse the district court judgment with regard to both the appeal and cross-appeal issues, and we remand.

■ In setting electric rates the PSC is authorized, under Section 49–02–02(6), N.D. C.C., to disallow or reduce expenditures made by a utility in purchasing materials from a subsidiary if the PSC determines that the subsidiary made unreasonable profits in the sale of those materials:

*"49–02–02. Powers of public service commission with reference to public utilities.* The commission shall have power to:

\* \* \* \* \* \*

"6. Require, in its discretion, proof that no unreasonable profit is made in the sale of materials to or services supplied for any public utility by any firm or corporation owned or controlled directly or indirectly by the public utility or any affiliate, subsidiary, parent company, associate, or any corporation whose controlling stockholders are also controlling stockholders of the public utility, before permitting the value of said materials or services to be included in valuations or cost of operations for ratemaking purposes. If unreasonable profits have been made in any such transactions, valuations of said materials and services may be reduced accordingly."

The PSC determined that Knife River made unreasonable profits in the sale of coal to MDU, and on the basis of that determination the PSC reduced MDU's fuel expenditures by $686,000 and its coal stocks by $77,000. In determining whether Knife River made unreasonable profits on the sale of its coal to MDU, the PSC used a "rate of return" analysis. Expert witness Larry Dobesh used a discounted cash-flow model of Baukol–Noonan, Inc., a coal company comparable to Knife River, to derive a reasonable rate of return. He concluded that Knife River's rate of return was excessive and unreasonable. The PSC agreed with Dobesh's analysis and disallowed part of MDU's coal expenditures. MDU asserts that the PSC is required to use a "price" test under this court's decision in *Application of Montana–Dakota Utilities Co.*, 102 N.W.2d 329 (N.D.1960), rather than the rate-of-return test it used in this case.

MDU's interpretation of this court's decision in *Application of Montana–Dakota Utilities Co., supra,* is unduly restrictive. The court held in that case at Syllabus ¶ 7:

"7. Where a utility purchases supplies from a controlled subsidiary, the Public Service Commission may inquire if unreasonable profits have been made by the subsidiary upon such purchases and, if the profits are found to be unreasonable, may reduce the allowances for such purchases accordingly. The commission may not determine that the subsidiary has made an excessive profit upon all of its operations and credit the utility's income with a share of the subsidiary's net profits." 102 N.W.2d at 331.

In the text of the opinion this court stated that the evidence, which indicated that coal was purchased by MDU from Knife River at its fair market value, did not support a finding of excessive profits upon the coal company's transactions with the utility. The decision did not limit the methodology that the PSC could use, under Section 49–02–02(6), N.D.C.C. (formerly § 49–0202(6), N.D.R.C., as amended), in determining whether a subsidiary made unreasonable profits in the sale of materials to the parent-regulated utility. In that case the record contained no evidence involving a rate-of-return test or other analysis other than price comparisons for deciding whether Knife River had made unreasonable profits in its sale of materials to MDU. The court did not state that a price test was the exclusive analysis to be used by the PSC, and it did not prohibit the use of other methodologies for making such a determination.

Furthermore, no ground for placing a limitation upon the PSC's methodology can be found under Section 49–02–02(6), N.D.C. C. The statute merely allows the PSC to require proof that no unreasonable profit is made in subsidiary sales to a regulated utility. It omits any reference to the price test or to any other language limiting the methodology to be used by the PSC in making its determination.

Other jurisdictions have concluded that it is within the regulatory body's discretion to determine the methodology to be used, so long as the method chosen does not produce an unjust or arbitrary result. *Montana–Dakota Utilities Co. v. Montana Department of Public Service Regulation,* 752 P.2d 155 (Mont.1988); *Application of Montana–Dakota Utilities Co.,* 278 N.W. 2d 189 (S.D.1979); see also, *Central Louisiana Electric Co. v. Louisiana Public Service Commission,* 373 So.2d 123 (La. 1979). In these jurisdictions the regulatory body has been allowed to use a rate-of-return analysis in determining whether a subsidiary has made unreasonable profits in the sale of materials to its regulated parent.

In addressing this issue in *Montana–Dakota Utilities Co. v. Montana Department of Public Service Regulation, supra,* the Montana Supreme Court made the following statements with which we agree:

"In determining what is just and reasonable, the PSC is not restricted to any single formula, if the method followed and the order entered 'when applied to the facts and viewed as a whole do not produce an unjust or arbitrary result.'

\*      \*      \*      \*      \*      \*

"In the instant case, the PSC adopted Dr. Wilson's method to compare [Knife River's] rate of return to the coal industry *generally . . . .* The comparable which could precisely correlate with the MDU–KRC rate of return does not exist. The PSC used *similar* comparables, then extrapolated the variables. In doing so, the PSC was simply trying to determine whether the coal expense paid by MDU was reasonable.

\*      \*      \*      \*      \*      \*

"The PSC adopted a method which was far from perfect, but it was also far from arbitrary. In the balance, we find it was reasonable.

\*      \*      \*      \*      \*      \*

"The market price method may actually be less quantifiable than the rate of return method because coal is a commodity with fluctuating prices. In either case, the selection of methods lies squarely within the discretion of the PSC." 752 P.2d at 157–158. [Emphasis in cited text.]

■ In this case the PSC determined that there was a lack of effective competi-

tion and therefore a rate-of-return analysis was more appropriate than the use of a price test to determine if Knife River made excessive profits on its sale of coal to MDU. We hold that the PSC acted within its authority in using the rate-of-return methodology in this case.

MDU also asserts that the PSC improperly applied the rate-of-return analysis in this case because it compared Knife River's rate of return with a reasonable rate of return derived from a discounted cash-flow model of Baukol–Noonan, Inc. MDU asserts that, instead, the PSC should have compared Knife River's rate of return with the actual rate of return experienced by Baukol–Noonan, Inc. MDU further asserts that a discounted cash-flow model cannot be appropriately applied to an unregulated business. The PSC asserts the contrary position that a discounted cash-flow model is a universal model applied to both regulated and unregulated businesses and that the model used by Dobesh was appropriate under these circumstances.

▮▮▮ In dealing with issues of a highly technical nature an administrative agency's expertise in the area is entitled to appreciable deference, and this court is reluctant to substitute its judgment for that of the administrative agency on such matters. *Montana–Dakota Utilities Co. v. PSC*, 413 N.W.2d 308 (N.D.1987). A determination of whether a subsidiary has made unreasonable profits on the sale of materials to a regulated parent company is a technical area which involves complex interrelated variables. Consequently, we give deference to the PSC's determinations on these matters. We are unpersuaded that the PSC's use of a discounted cash-flow model to determine a reasonable rate of return for Knife River's sale of coal to MDU constituted an inappropriate application of its statutory authority in this area.

In its cross-appeal MDU asserts that the manner by which the PSC restated MDU's unamortized investment-tax-credit balance constituted improper retroactive ratemaking. Pursuant to 26 U.S.C. § 46(f) of the Internal Revenue Code, MDU elected the option 1 method of treating its investment-

tax-credit (ITC) for ratemaking purposes. Under that option the entire ITC balance is immediately deducted from the utility's rate base (an immediate benefit to the utility's customers) after which that same amount is amortized or restored to the rate base over a period of time, but not less rapidly than the depreciation time period of the property purchased for which the ITC was allowed. This amortization provides a delayed benefit to the utility's shareholders. Although the property for which the ITC was allowed is depreciated over 26 years, MDU elected a 20–year amortization period for restoring the ITC to the rate base. This 20–year period has been in use by MDU and accepted in past ratemaking proceedings by the PSC. However, in these proceedings the PSC determined that MDU customers would reap additional benefits if the amortization period were extended to 26 years. Consequently, the PSC recomputed MDU's unamortized ITC balance to reflect a 26–year amortization period rather than a 20–year period. In making the adjustment the PSC increased MDU's unamortized ITC balance by $432,-000 and reduced its current rate base by that same amount.

On appeal MDU does not object to the change in the amortization period from 20 to 26 years. It does object, however, to the restatement of its unamortized balance as if a 26–year amortization had been used from the beginning. MDU asserts that such action by the PSC constitutes retroactive ratemaking. MDU contends that, in effect, the PSC is reducing future rates to compensate for what the PSC now determines were past excessive rates resulting from restoration of the unamortized ITC to the rate base more rapidly than was appropriate.

▮▮▮ When the PSC determines that existing rates are unreasonable, it may only fix or establish new rates to be charged in the future. Section 49–02–03, N.D.C.C.; *Quad County Community Action Agency v. Elkin*, 315 N.W.2d 665 (N.D.1982). Prior to these proceedings, MDU's restoration of the ITC to its rate base utilizing a 20–year amortization period

was accepted as proper by the PSC. We agree with MDU that the PSC's restatement of the unamortized ITC balance to reflect amortization over a 26–year period constitutes a form of retroactive ratemaking which decreases future rates to compensate for previous higher rates which were based, in part, upon the PSC's initial acceptance of the 20–year ITC amortization period. This the PSC cannot do. We conclude that the PSC, in requiring MDU to change to a 26–year amortization period, can only adjust the amortization schedule of MDU's remaining unamortized ITC balance.

The judgment of the district court is reversed and the case is remanded for entry of an appropriate judgment consistent with this opinion.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.