USM CORPORATION, Plaintiff,

Positive Chemical Corporation, Defendant–Appellee,

v.

AMERICAN AEROSOLS, INC., Defendant–Appellant.

No. 77–1105.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1979.

Decided Sept. 25, 1980.

---

1. It is appropriate to dispose of this case summarily. See *Groendyke Transportation, Inc. v.* *Davis*, 5 Cir., 1969, 406 F.2d 1158.

John D. Tully, Hunter M. Meriwether, Warner, Norcross & Judd, Grand Rapids, Mich., for defendant–appellant.

Walter J. Russell, Russell, Ward, Hodgkins & Heaney, Grand Rapids, Mich., for defendant–appellee.

Before EDWARDS, Chief Judge, and CELEBREZZE and BOYCE F. MARTIN, Jr., Circuit Judges.

CELEBREZZE, Circuit Judge.

This case is before the court on appeal from a judgment of the district court

awarding defendant–appellee, Positive Chemical Corporation [hereinafter Positive], damages on its cross–claim against defendant–appellant, American Aerosols, Inc. [hereinafter American or Aerosols], for breaches of contract and warranty arising out of the development, packaging, and distribution of an aerosol spray adhesive known as "Spray Glue." Appellee Positive developed a nonflammable, rubber–based adhesive which was packaged in aerosol cans by appellant American. Plaintiff USM Corporation [hereinafter USM] marketed and distributed the packaged product to retail dealers through its nationwide distribution network. After the product developed serious clogging problems, USM filed this suit against both Positive and American alleging numerous grounds for monetary relief.[1] Positive and American cross–claimed against each other seeking indemnity and other damages. After a non–jury trial, the district court entered judgment on behalf of USM against Positive and on behalf of Positive on its cross–claim against American. American presently appeals from that portion of the judgment rendering it liable to Positive.[2]

Appellant raises four contentions of error in the district court's findings of fact and conclusions of law:

1. The district court erroneously overruled American's discovery motion to compel production of a letter written by Mr. Joseph Marchbank to Positive's president;

2. The trial court erroneously found that the clogging problem was solely attributable to appellant;

3. The trial court erroneously failed to conclude that dealings between Positive and American excluded or modified the implied terms and warranties relied upon by the trial court; and,

4. The trial court's damage award erroneously compensates Positive doubly for its packaging payments to American.

We find all but one of appellant's arguments meritless, and accordingly affirm in part, vacate in part, and remand for a reassessment of Positive's damages.

## I. FACTUAL BACKGROUND

Prior to 1968, Positive, in conjunction with American, developed and successfully marketed an aerosol spray adhesive for industrial use. This industrial product employed flammable solvents and propellants. The success of the industrial product prompted Positive to develop a non–flammable product for consumer use. In 1968, Positive developed a non–flammable aerosol adhesive known as PB 1325. The primary ingredients of PB 1325 were a rubber–based adhesive and a combination of solvents deemed sufficient to prevent the adhesive from solidifying in such a way as to inhibit aerosol application.

Positive subsequently contacted American to develop an appropriate aerosol delivery system for PB 1325. After conducting experimentation and reviewing a number of different sample cans supplied by American, Positive developed specifications for aerosol delivery of PB 1325.

In November 1968, Positive ordered from American 2,500 cans of PB 1325 packaged according to specifications. A few cans from this order were furnished to USM for its evaluation. This marketing venture proved successful and USM determined that the product had market potential. USM placed an order for 4,500 cans of "Spray Glue" for the purpose of test marketing. Based on the results of this test marketing in 20 midwestern hardware stores, USM contracted with Positive for the wholesale merchandising of PB 1325 under the trade name "Spray Glue." USM ordered 200,000 5–ounce cans of PB 1325 packaged according to the specifications employed in the two previous test runs.

1. USM sought damages against Positive for breach of contract, breach of warranty, and negligence. USM sought relief from American for breach of warranty and negligence.

2. USM is not a party to this appeal.

Shortly after distribution of "Spray Glue" to retail outlets, USM began receiving complaints stating the cans of glue would not spray. American studied the problem and discovered that a "slug" or "worm" of adhesive had dried in the tube leading from the can to the spray valve.[3] The district court found the clogging was due to the loss of methylene chloride which decreased the solubility of the adhesive compound. The court's inquiry was thus narrowed to a determination of how the loss of methylene chloride occurred.

After evaluating six possible theories concerning the loss of solvent, the district court concluded that the only theories consistent with the facts pointed to American. The court found that the most likely explanation for the methylene chloride loss supported by the facts is that some loss occurred during canning, that the consequently more viscous adhesive base was forced up into the tubes either through under the cap filling or through leakage, and that either leakage or solvent deficiency allowed the adhesive to dry, clogging the tubes.

The district court, applying Michigan law, found Positive liable to USM for breach of

contract, breach of implied warranty of merchantability, and breach of express warranty. The court found American was not liable to USM.[4] Additionally, the court found American liable to Positive for breach of contract, breach of implied warranty of fitness for a particular purpose, and breach of express warranty. USM's judgment against Positive amounted to $112,729.04[5] and Positive's judgment against American amounted to $167,796.72.[6]

## II. DISCUSSION

■ The first issue raised by appellant concerns the discoverability of a letter written by Mr. Joseph Marchbank to Positive's president which allegedly supports appellant's position that the defect in "Spray Glue" was in the adhesive itself and not in its containerization. The district court overruled appellant's motion to compel production of the document under Fed.R.Civ.P. 26 and 34.[7] Appellant contends the trial court committed error justifying reversal.

Shortly after USM notified Positive of its intention to hold Positive liable for any damages sustained as a result of Spray

---

**3.** After some further experimentation, it was believed that a substitution of a larger sprayer head would allow can pressure to blow out the "slug." USM was supplied substitute sprayer heads which proved ineffectual.

**4.** The court relied on an interpretation of Michigan law which does not permit a person not in privity with the defendant to recover economic losses in a breach of warranty situation. This legal conclusion is not before the court on this appeal.

**5.** USM's damages are comprised as follows:

| | |
|---|---|
| Lost Revenue | $22,644.00 |
| Price of glue | 61,210.75 |
| Labor Expense for Nozzles | 3,737.60 |
| Storage | 463.45 |
| Interest | 24,673.24 |
| TOTAL | $112,729.04 |

J.App. p. 75(a)

**6.** Positive's damages are comprised as follows:

| | |
|---|---|
| Judgment against it | $112,729.04 |
| Testing expense | 3,740.66 |
| Payment for canning | 39,450.36 |
| Interest | 11,876.66 |
| TOTAL | $167,796.72 |

**7.** Fed.R.Civ.P. 34 provides in pertinent part:
(a) **Scope.** Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phono–records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Glue's malfunction, Mr. Aaron White, president of Positive, sent a letter dated March 5, 1971 to Mr. Joseph Marchbank of Spray–On Products, Inc., Bedford Heights, Ohio requesting his "unbiased and analytical evaluation of what in fact went wrong" with Spray Glue. Mr. Marchbank's conclusions were transmitted in a letter dated April 5, 1971 to Mr. White. American sought production of both of these documents. The district court found these documents were not discoverable under Fed.R. Civ.P. 26(b)(4) because they constituted opinions held by an expert informally consulted in anticipation of litigation. The issue presents us with a need to construe Rule 26(b)(4), a question of first impression in our circuit.

Civil Rule 26(b)(4) provides in pertinent part:

> (4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, *may be obtained only as follows:*
>
> (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.
>
> (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not

expected to be called as a witness at trial, only as provided in rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. (emphasis added).

This rule was adopted in its present form in 1970 in part to respond to a number of divergent views that existed in the courts concerning the discoverability of expert information, and it resolved the disagreements in favor of much more liberal discovery than was previously permissible. *See* Wright & Miller, Federal Practice and Procedure: Civil § 2029 (1970). Some of the previous court decisions had held that an expert's information was privileged simply because of his status as an expert, or that his status brought expert information within the work–product doctrine. These theories were completely repudiated by Rule 26(b)(4). Any restrictions which currently exist on the discoverability of such information are based on the doctrine of "fairness." *See* Advisory Committee's Note, 48 F.R.S. 497 (1970).

Commencing our analysis with the language of the Rule itself, it is clear that discovery of expert information garnered in anticipation of litigation "may be obtained only" as set out in Rule 26(b)(4). Under Rule 26(b)(4)(A) the names of experts a party intends to call as a witness and the substance of their testimony are discoverable. Pursuant to Rule 26(b)(4)(B) discovery concerning experts retained or specially employed in anticipation of litigation but not expected to be called as witnesses can only be had upon a showing of exceptional circumstances.[8] Discovery of information received from an expert *informally consulted in anticipation of trial,* but not *retained or specially employed* is not provided for in Rule 26(b)(4). Since discovery of expert information acquired in anticipation of litigation can only be had in accordance

8. An exception to this general rule is contained in Civil Rule 35(b) concerning the discoverability of opinions held by an examining physician.

with Rule 26(b)(4), if no provision is made for experts consulted informally in anticipation of litigation, no discovery concerning them is permissible. *See Nemetz v. Aye*, 63 F.R.D. 66 (W.D.Pa.1974); Advisory Committee's Note, 48 F.R.D. 497, 504 (1970),[9] Wright & Miller, Federal Practice and Procedure: Civil § 2033, 4 Moore's Federal Practice ¶ 26.66[4], at 26–483 (1979).[10]

In the present case, the district court specifically found that Positive contacted Mr. Marchbank on an informal basis and did not "specially employ" him within the meaning of Rule 26(b)(4)(B). In making its ruling that Mr. Marchbank's letter was not discoverable the court relied on Mr. Marchbank's statements expressing his unwillingness to become involved in the Positive–American dispute and on the fact Mr. Marchbank received no compensation for his services.

Appellant contends that the trial court clearly erred in holding that Mr. Marchbank was informally consulted in anticipation of litigation. Appellant argues Marchbank was not consulted in preparation for trial but rather as a prospective purchaser of Spray Glue. We disagree. The evidence of record on this issue fails to display the clearly erroneous nature of the trial court's ruling. The fact that Mr. Marchbank was contacted after USM indicated it would hold Positive liable and that Mr. Marchbank received no compensation for his services lends strong support to the trial court's ruling.

■ Appellant's next assignment of error submits the trial court clearly erred when it found that American was solely responsible for the clogging problem. Appellant argues the trial court disregarded strong evidence implicating PB 1325 as the cause of the clogging. We disagree.

The district court was confronted with a difficult situation for the finder of fact. Positive and American engaged in complex production of a substance which ultimately would not work. The court was confronted with eliminating possible theories and eventually settling on an explanation of the defect which was more probable than not. From the known facts in the case, the court concluded that the only theories consistent with the facts pointed to American. This finding is substantially supported by record evidence. The evidence displayed that: (1) virtually all the cans failed to spray; (2) the cause was material plugging the valves and the tubes leading from the cans to the valves; (3) the substance in the cans did not contain the amount of methylene chloride indicated in PB 1325's formula; (4) methylene chloride deficiencies were randomly distributed throughout the cans; and (6) there was some leakage in some of the cans. It was not at all clearly erroneous for the trial court to find from the above facts that a combination of incorrect handling of PB 1325 by American, of under the cap filling of the cans by American, and leakage of the cans accounted for the clogging of the valves. All of these theories point to American.

■ The third assignment of error raised by appellant asserts the district court failed to conclude that dealings between Positive and American excluded or modified the implied terms and warranties relied upon by the district court as a predicate for liability. American submits that since Positive prescribed packaging specifications and never disclosed the actual chemical composition of PB 1325 to American, implied warranties of merchantability were modified or excluded.

The district court found that American assumed the obligation to produce aerosol

---

9. In discussing Rule 26(b)(4)(B) the Advisory Committee states in part:

    Subsection (b)(4)(B) is concerned only with experts retained or specially consulted in relation to trial preparation. *Thus, the subdivision precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed.*

    As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed, *but not those informally consulted.*

10. Experts not consulted in anticipation of litigation are freely discoverable as any ordinary witness within the confines of the general scope of discovery.

packaging for PB 1325 without qualification. The district court also found that American made no attempt to disclaim implied warranties. We cannot conclude these factual findings are clearly erroneous nor can we state on the basis of the record before us that the parties' conduct excluded or modified these warranties. *See* Mich. Comp.Laws, § 440.2316(3)(c).

The final issue raised by appellant concerns an allegation that Positive was doubly compensated for the amount it paid American for aerosol packaging. American contends the price of packaging PB 1325 was included in the amount of USM's judgment and to award Positive such costs in addition to the amount of USM's judgment constituted double recovery for the same loss.

We find merit in appellant's argument and conclude a remand is necessary to properly resolve this issue. USM was awarded damages including the entire price it paid Positive for the packaged "Spray Glue." American was required to indemnify Positive for USM's damages. The judgment also requires American to pay Positive the amount paid American for packaging processes. Thus, if Positive included in its price to USM the costs of containerization charged by American, then the judgment indeed doubly compensated Positive for its loss.

From our review of the record, we find no specific findings on this issue nor can we independently conclude that Positive included packaging costs in its price to USM. Since we find the record deficient in this regard, a remand is necessary for a determination of one specific fact: Did USM's price for "Spray Glue" contain the costs of containerization paid American? If yes, a reduction of Positive's damages is in order.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part, vacated in part, and the case is remanded with instructions to reassess Positive's damages in accordance with this opinion.