**Jeffrey POLUM, Petitioner,**

v.

**NORTH DAKOTA DISTRICT COURT, STARK COUNTY, SOUTHWEST JUDICIAL DISTRICT, Judge Allan Schmalenberger, and Rod Wulff, Respondents.**

Civ. No. 890149.

Supreme Court of North Dakota.

Jan. 18, 1990.

Dosland, Dosland, Nordhougen, Lillehaug & Johnson, P.A., Moorhead, Minn., for petitioner; argued by J.P. Dosland, Moorhead, Minn.

Lucas & Smith, Bismarck, for respondents; argued by A. William Lucas, Bismarck.

ERICKSTAD, Chief Justice.

Jeffrey Polum petitioned this court for a supervisory writ directing the District Court for Stark County to vacate its order compelling discovery. The petition is granted.

Polum was injured while water skiing behind a boat operated by Rod Wulff. Polum was treated for his injury by Dr. Adel F. Hassan and Dr. Willard R. Lilly.

Polum sued Hassan and Lilly for medical malpractice arising out of their treatment of his injuries. Polum retained a physician to render an expert opinion on malpractice, and designated him as an expert witness to be called at trial. The expert was deposed in the malpractice action. Ultimately, Polum settled his malpractice claims against Hassan and Lilly.

Polum then sued Wulff, alleging that Wulff's negligent operation of the boat caused his injuries. Wulff, through interrogatories, sought to discover the identity of, and obtain copies of reports of, experts retained by Polum in the prior malpractice action. Polum objected to these interrogatories, and the court issued its order compelling disclosure. Polum has now petitioned this court for a supervisory writ ordering the district court to vacate its order.

## I. JURISDICTION

Initially we must determine whether this is an appropriate case in which to exercise our supervisory jurisdiction. Is-

suance of writs under our supervisory jurisdiction is entirely discretionary with this court, and will be done rarely and with caution. *Lashkowitz v. Disciplinary Board*, 410 N.W.2d 502, 503 (N.D.1987); *Heartview Foundation v. Glaser*, 361 N.W.2d 232, 234 (N.D.1985). Such jurisdiction will only be invoked to rectify errors and prevent injustice when no adequate alternative remedies exist. *Odden v. O'Keefe*, 450 N.W.2d 707, 708 (N.D.1990); *Minot Daily News v. Holum*, 380 N.W.2d 347, 349 (N.D.1986); *Heartview Foundation v. Glaser, supra*, 361 N.W.2d at 233.

In the context of a court order compelling answers to interrogatories, we have stated:

"In this instance the petitioners have no viable alternative remedy to a supervisory writ. The district court order compelling petitioners to answer the interrogatory is not appealable [see Sec. 28-27-02, N.D.C.C.; *Northwest Airlines v. State, Through Bd. of Equal.*, 244 N.W.2d 708 (N.D.1976) ], and they have no recourse but to answer the interrogatory or be held in contempt [see Rule 37(d), N.D.R.Civ.P.]. Consequently, the only feasible remedy available to petitioners is to seek a supervisory writ." *Heartview Foundation v. Glaser, supra*, 361 N.W.2d at 234.

We conclude that this case is appropriate for exercise of our supervisory jurisdiction.

## II. WORK PRODUCT

■ Polum has based his arguments on appeal upon his assertion that the expert's identity and report are within the scope of the work-product doctrine and not discoverable under Rule 26(b)(3), N.D.R.Civ.P.

Our Rule 26 is derived from the corresponding federal rule, and thus we will look to interpretive federal caselaw for guidance in construing our rule. *E.g., Shark v. Thompson*, 373 N.W.2d 859, 863

(N.D.1985). When the federal rule was amended in 1970, the accompanying Notes of the Advisory Committee made it clear that the "new provisions of subdivision (b)(4) ... reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine." Various federal courts have thus concluded that discovery of expert information is governed by Rule 26(b)(4), not the work-product provisions of Rule 26(b)(3). *See, e.g., Toledo Edison Co. v. G A Technologies, Inc.*, 847 F.2d 335, 340–341 (6th Cir.1988); *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 594 (3d Cir.1984); *USM Corp. v. American Aerosols, Inc.*, 631 F.2d 420, 424 (6th Cir.1980).[1] Numerous state courts, interpreting state rules derived from the federal rule, have also concluded that the work-product doctrine does not encompass expert information. *See, e.g., Sea Colony West Phase I Condominium Association, Inc. v. Sea Colony, Inc.*, 438 A.2d 1233, 1235–1236 (Del.Super.Ct.1981); *Mims v. Casademont*, 464 So.2d 643, 644 (Fla.Dist. Ct.App.1985); *American Buildings Co. v. Kokomo Grain Co., Inc.*, 506 N.E.2d 56, 59 (Ind.Ct.App.1987).

We conclude that, under the circumstances presented in this case, the work-product doctrine is inapplicable to the determination whether the expert information sought is properly discoverable.

## III. RULE 26(b)(4)

The applicable provisions governing discovery of expert information are contained in Rule 26(b)(4), N.D.R.Civ.P. Because the expert in this case has not been designated as a witness to be called at trial, the relevant provision is Rule 26(b)(4)(B):

"A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not ex-

---

**1.** Polum cites *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379 (5th Cir.1989), in support of his argument that work-product privilege may carry over to subsequent litigation to protect expert information. In *Shields*, however, the parties apparently did not assert that expert information was not governed by the work-product privilege and the court's opinion actually focused upon admissibility of such evidence at trial, not its discoverability under Rule 26. We also note that the expert information involved was a survey conducted by a consulting expert at the direction of counsel, and apparently was not the typical expert "opinion."

pected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

■ The primary question presented here is whether an expert retained in prior litigation, which arose out of the same factual occurrences and involved essentially identical legal issues, should be considered an expert retained in anticipation of litigation or preparation for trial for the purposes of this case. The question is a novel one, with very limited caselaw discussing the issue.

The case which perhaps presents the most similar factual scenario is *In re Agent Orange Product Liability Litigation*, 105 F.R.D. 577 (E.D.N.Y.1985). In *Agent Orange, supra*, three doctors had been retained as experts by the defendants in connection with a class action lawsuit. That action settled, and plaintiffs who had "opted-out" of the class action sought to depose the three doctors. In a well-reasoned and thoughtful opinion, Chief Judge Weinstein concluded that discovery of the three experts was governed by Rule 26(b)(4)(B), F.R.Civ.P.:

"None of the doctors has been involved in pretrial preparation in the *Lilley* and *Hogan* cases. It does not necessarily follow, however, that Rule 26(b)(4) does not control discovery of these experts. These three experts were retained by defendants 'in anticipation of litigation or [preparation] for trial' in *Ryan*, a companion case in this multidistrict litigation that raised nearly identical legal and factual issues. *See In re 'Agent Orange' Product Liability Litigation*, 597 F.Supp. 740 (E.D.N.Y.1984). The defendants in the *Lilley* and *Hogan* actions are also defendants in the *Ryan* class action; the plaintiff in *Lilley* is a *Ryan* class member who opted out of the class.

\* \* \* \* \* \*

"Given the legal and factual similarities, the involvement of many of the same parties, and the procedural realities of the [multidistrict litigation] process, it is reasonable to interpret Rule 26(b)(4) to reach experts retained by a party for trial preparation in a closely related case that is before the court as part of the same multidistrict litigation." *In re Agent Orange Product Liability Litigation, supra*, 105 F.R.D. at 580.

Similarly, in *Hermsdorfer v. American Motors Corp.*, 96 F.R.D. 13 (W.D.N.Y. 1982), the plaintiffs sought to depose experts who had been hired by the defendant to conduct experiments in connection with numerous pending and future lawsuits. In concluding that Rule 26(b)(4)(B), F.R.Civ.P. applied, the court stated:

"Plaintiffs rely heavily upon language in *Grinnell Corp. v. Hackett*, 70 F.R.D. 326, 333 (D.R.I.1976), stating that in order for rule 26(b)(4)(B) to apply 'the information sought [must have been] obtained for the very purpose of preparing for the litigation in question.' This language is not inconsistent with applying rule 26(b)(4)(B) to expert information obtained for the purpose of preparing for *numerous* lawsuits, some perhaps already filed and others yet anticipated merely as a matter of statistical or logical probability. The information sought here was indeed obtained for the very purpose of preparing for this litigation—and all other similar litigations against defendants." *Hermsdorfer v. American Motors Corp., supra*, 96 F.R.D. at 15. *See also In re Sinking of Barge Ranger I*, 92 F.R.D. 486, 489 (S.D.Tex.1981) ("The test to be applied is whether, in light of the nature of the documents and factual situation in a particular case, the experts and their information can fairly be said to have been obtained or acquired because of the prospect of litigation.").

A somewhat different situation was presented in *American Buildings Co. v. Kokomo Grain Co., Inc.*, 506 N.E.2d 56 (Ind.Ct.App.1987). The plaintiff sued to recover damages for collapse of a building provided by the defendant, and sought to discover the report of an expert retained by the defendant in prior litigation involving collapse of another building. The court

held that Rule 26(B)(4)(b) of the Indiana Trial Rules did not apply to an expert retained or specifically hired in anticipation of prior litigation. *American Buildings, supra,* 506 N.E.2d at 59–61. The court attempted to distinguish *Agent Orange, supra. American Buildings, supra,* 506 N.E.2d at 60–61 n. 1.

■ We believe these cases, read together, support the conclusion that an expert retained in anticipation of prior litigation which is closely related legally and factually to the present litigation is covered by Rule 26(b)(4)(B), N.D.R.Civ.P. In this case, the expert was retained to provide an expert opinion on malpractice in Polum's action against Hassan and Lilly. When that case settled, Polum sued Wulff for negligence. Wulff now contends that Polum's injuries were caused by the alleged malpractice of Hassan and Lilly, and this issue will undoubtedly be fully litigated at trial. Under these circumstances, we conclude that discovery of this expert is governed by Rule 26(b)(4)(B), N.D.R.Civ.P.

■ Our conclusion is amply supported by the history and purposes of Rule 26. The Notes of the Advisory Committee on the 1970 Amendments to the Rules indicated that earlier judicial restrictions on discovery of expert information reflected a fear that one side would benefit unduly from the other's better preparation, and that the procedures established in Rule 26(b)(4)(B) were designed to alleviate that risk by adopting the more recently developed doctrine of "unfairness." As noted by the court in *Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496, 502 (10th Cir.1980), the "advisory committee notes indicate that the structure of rule 26 was largely developed around the doctrine of unfairness—designed to prevent a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation."

The unfairness doctrine is more fully explained in *Pearl Brewing Co. v. Jos.*

*Schlitz Brewing Co.,* 415 F.Supp. 1122, 1138 (S.D.Tex.1976):

"The 'unfairness' doctrine now embodied in Rule 26(b)(4)(B) ... emphasizes that financial factors are to be considered before one party is permitted access to an adversary's expert to 'extract' his expertise without having to underwrite the initial costs or long-range expense of retaining and consulting with that expert.

"The basic premise of the doctrine therefore is that permitting discovery of experts is unfair inasmuch as it is the equivalent of taking another's property without proper compensation.... There is the additional danger, beyond any consideration of proper compensation, that such discovery would afford the opportunity to take unwarranted advantage of an adversary's trial preparation."

The court further stated that the rule does not allow a party "to avoid the expense of compensating expert witnesses or to develop its own case entirely out of the mouth of its adversary's expert witness." *Pearl Brewing, supra,* 415 F.Supp. at 1138. *See also Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984) (Rule 26(b)(4)(B) "is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation").

If we were to construe Rule 26(b)(4)(B) to not apply to Polum's expert, we would allow Wulff to prove his main defense primarily with evidence developed through Polum's financial resources, diligence, and preparation. Such a result could hardly be labeled fair. We conclude that Rule 26(b)(4)(B) governs discovery of Polum's expert.

Wulff asserts that, even if Rule 26(b)(4)(B) applies, discovery is warranted because exceptional circumstances are present. Rule 26(b)(4)(B) permits discovery of expert information "only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[2]

**2.** Rule 35, N.D.R.Civ.P., provides for discovery

of the report of an examining physician when

Wulff has failed to direct our attention to any evidence in the record to support his assertion that exceptional circumstances are present in this case. There is no suggestion that Polum's expert is the only expert qualified to give an opinion on this subject matter, or that he possesses extraordinary qualifications rendering his opinion more valuable than any other expert's opinion. Wulff obviously can obtain another medical expert to render an opinion on the same subject. Under these circumstances, Rule 26(b)(4)(B) precludes discovery.

Finally, Wulff asserts that Rule 26(b)(4)(B) permits discovery of the expert's identity without a showing of exceptional circumstances. There is a split of authority on the question whether the identity of an expert retained in anticipation of litigation but not to be called as a witness is discoverable without a showing of exceptional circumstances. *Weisenberger v. Senger*, 381 N.W.2d 187, 190 (N.D.1986); *see* 4 Moore's Federal Practice ¶ 26.66[4] (1989), and cases cited therein.

Apparently only one federal circuit court has reached this issue. In *Ager v. Jane C.*

*Stormont Hospital and Training School for Nurses, supra,* the United States Court of Appeals for the Tenth Circuit held that a showing of exceptional circumstances was required to justify discovery of a retained expert's identity. In rejecting the defendant's contention that the identity of the experts did not require such a showing, the court reasoned:

"The drafters of rule 26 did not contemplate such a result:

"Subdivision (b)(4)(B) is concerned only with experts retained or specially consulted in relation to trial preparation. Thus the subdivision precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed. As an ancillary procedure, a party may *on a proper showing* require the other party to *name* experts retained or specially employed, but not those informally consulted. [Emphasis supplied].

"We hold that the 'proper showing' required to compel discovery of a non-witness expert retained or specially employed in anticipation of litigation corre-

an examination has been ordered by the court or has been conducted upon agreement of the parties:

· "*(a) Order for Examination.* When the mental or physical condition (including the blood group) of a party, or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"*(b) Report of Examining Physician.*

"(1) If requested by the party against whom an order is made under Rule 35(a) or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a

like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows that he is unable to obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition.

"(3) This subdivision applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise. This subdivision does not preclude discovery of a report of an examining physician or the taking of a deposition of the physician in accordance with the provisions of any other rule."

The rule does not apply under the facts presented in this case.

sponds to a showing of 'exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.' Fed.Rules Civ. Proc., rule 26(b)(4)(B), 28 U.S.C.A.

"There are several policy considerations supporting our view. Contrary to Dr. Tappen's view, once the identities of retained or specially employed experts are disclosed, the protective provisions of the rule concerning facts known or opinions held by such experts are subverted. The expert may be contacted or his records obtained and information normally non-discoverable, under rule 26(b)(4)(B), revealed. Similarly, although perhaps rarer, the opponent may attempt to compel an expert retained or specially employed by an adverse party in anticipation of trial, but whom the adverse party does not intend to call, to testify at trial. *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir.1976). The possibility also exists, although we do not suggest it would occur in this case, or that it would be proper, that a party may call his opponent to the stand and ask if certain experts were retained in anticipation of trial, but not called as a witness, thereby leaving with the jury an inference that the retaining party is attempting to suppress adverse facts or opinions. Finally, we agree with Ager's view that '[d]isclosure of the identities of [medical] consultative experts would inevitably lessen the number of candid opinions available as well as the number of consultants willing to even discuss a potential medical malpractice claim with counsel.... [I]n medical malpractice actions [perhaps] more than any other type of litigation, the limited availability of consultative experts and the widespread aversion of many health care providers to assist plaintiff's counsel require that, absent special circumstances, discovery of the identity of evaluative consultants be denied. If one assumes that access to informed opinions is desir-

able in both prosecuting valid claims and eliminating groundless ones, a discovery practice that would do harm to these objectives should not be condoned.' Brief of appellant at pp. 27–28, 29–30.

"In sum, we hold that the identity, and other collateral information concerning an expert who is retained or specially employed in anticipation of litigation, but not expected to be called as a witness at trial, is not discoverable except as 'provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.' Fed. Rules Civ.Proc., rule 26(b)(4)(B), 28 U.S. C.A. The party 'seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden' in demonstrating the existence of exceptional circumstances. *Hoover v. United States Dept. of Interior*, 611 F.2d 1132, 1142 n. 13 (5th Cir.1980)." *Ager, supra*, 622 F.2d at 503.

■ We agree with the rationale and conclusion of the court in *Ager, supra*, and we hold that the identity of an expert retained in preparation for trial but not called as a witness may only be discovered upon a showing of exceptional circumstances pursuant to Rule 26(b)(4)(B).

For the reasons stated in this opinion we conclude that this is an appropriate case in which to exercise our supervisory authority. We therefore direct the district court to vacate its order compelling disclosure of Polum's medical expert and any reports prepared by that expert.[3]

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

**3.** During oral argument Polum's counsel informed us that there were in fact other experts retained or consulted in connection with the malpractice action against Hassan and Lilly.

The issue of discoverability of those experts and their opinions was not considered by the trial court, and we accordingly will not address that issue.