Kelly W. BARR et al., Plaintiffs
and Appellants,

v.

BARNES COUNTY BOARD OF COUNTY
COMMISSIONERS, Defendant
and Respondent.

Civ. No. 8755.

Supreme Court of North Dakota.

Feb. 9, 1972.

Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, for plaintiffs and appellants.

John T. Paulson, State's Atty., for defendant and respondent.

ADAM GEFREH, District Judge.

The plaintiffs appeal from a judgment entered in Barnes County District Court, dated March 5, 1971, in which the court granted the plaintiffs damages in the sum of five hundred dollars and denied the injunctive relief prayed for in the complaint.

The plaintiffs in their appeal have stated the following specifications of error:

1. The trial court erred in limiting the plaintiffs' damages to $500.00, the findings of fact entered by the court having stated that there were 203 acres of the plaintiffs' land that were flooded by reason of the defendant's wrongful act and that the reasonable rental value of such land was $12.00 per acre.

2. The court erred in refusing to grant injunctional relief.

The plaintiffs contend that the amount of damages awarded is inconsistent with

the court's own findings of fact and therefore the award is erroneous. The trial court on this issue made the following findings of fact:

## XV.

That the land of the plaintiffs was to be farmed in 1970 since it was no longer in the "soil bank". The plaintiffs had bought the land subject to a farm lease, under the terms of which the tenant was to farm the said land and retain 70% of the revenue and the plaintiffs 30% of the revenue. There are approximately 322 tillable acres on the three-quarters according to the United States Department of Agriculture records.

## XVI.

That in the spring of 1970, water again came through the ditch at Goose Lake and therefore onto the land of the plaintiffs in a quantity and velocity much greater than was accustomed to come in a state of nature. As a result, 163 acres could not be planted on the plaintiffs' land that year due to the continued wetness of the ground. The proximate cause of the flooding of the plaintiffs' land was the digging of the ditch by the defendant at Goose Lake but for the wet conditions that resulted, the plaintiffs could also have broken out another 40 acres on the land which had previously not been farmed.

## XVIII.

That the reasonable rental value of the plaintiffs' agricultural lands is $12.00 per acre.

Pursuant to these findings the court entered the following conclusion of law:

## V.

That the negligent creation of the unlawful ditch by the defendant was the proximate cause of the plaintiffs' damages to their land, said damages being assessed at the sum of $500.00, which amount would compensate the plaintiffs for their 30% share of the farm income they were entitled to under the farm lease.

The plaintiffs now contend that since the court found in its findings of fact that approximately 203 acres of land was flooded, and that the reasonable rental value of their agricultural land was found to be $12.00 per acre, the damages should have been $2,436.00 rather than $500.00. The plaintiffs further claim that the court erroneously used the farm lease as a basis for allocating 30% of the damages to the plaintiffs 'rather than 100% of the damages to which they are entitled.

■ If we were to accept the findings of fact as stated, we could easily agree that the court may have erred in its conclusion of law. The findings of fact were prepared for the court by counsel for the plaintiffs. The defendant did not object to the findings and apparently the court assumed that the plaintiffs were satisfied with the findings and had no reason for making additional findings. However, since the plaintiffs are now attacking the trial court's conclusions of law based on the findings, it is necessary for this court to examine the sufficiency of the findings made to determine whether they support the court's conclusion on damages. Although the plaintiffs have not demanded a trial de novo in their appeal and have only appealed on specifications of error, we find it necessary to review the evidence as it applies to the findings and conclusions of law in order to determine whether the court erred when it concluded that the plaintiffs have suffered damages in the sum of only $500.00.

■ In reviewing the evidence for this purpose we find that additional findings of fact should have been included in the court's findings of fact, such as a finding that the tenant who farmed this land in 1969 plowed up only about 250 acres of

crop land on these three-quarters of land during the summer or fall of 1968 of which he only seeded about 200 acres in 1969, that being the amount allowed under the ASC (Agricultural Stabilization and Conservation Service) program; that the tenant had signed up to participate under the ASC program for 1970 and under the program in effect for 1970 was only allowed to crop 203.9 acres under minimum participation (wheat program only) and would have been allowed only 148.2 acres under maximum participation (wheat and feed program); that the tenant had agreed to only minimum participation in 1970. The facts further show that the tenant in 1970 had actually seeded 152.7 acres to crops; and that the plaintiffs' share of the ASC payment amounted to $412.00. The testimony also shows that had the tenant signed up for maximum participation in the ASC program, 55.7 acres would have been placed in the feed program for which the Federal Government would have paid $18.61 per acre and the plaintiffs would have been entitled to 30% of this payment under their farm lease with the tenant. According to testimony by the ASC director, all the flooded land qualified for either conserving or diverted acres in 1970. After considering these additional findings that could have been made, since the testimony was unrefuted, the court could have concluded that the plaintiffs suffered the loss from either 30% of the net crop share from approximately 50 acres that could have been planted under minimum participation under the ASC program, or 30% of the 55.7 acres at $18.61 per acre under maximum participation.

There was no evidence in the record at all concerning the landlord's proceeds for 1970 under the farm lease, and no evidence that the average county cash rental of $12.00 per acre was applicable to the plaintiffs' land. Even if we were to assume that the net proceeds of the landlord's 30% share under the farm lease for 1970 would have been equivalent to the cash rental value of $12.00 per acre, the landlord's income on

approximately 50 additional acres that could have been seeded in 1970 would only have amounted to $600.00. If the tenant had decided to sign up for maximum ASC participation in 1970, the additional income would have been only $310.97 to which the plaintiffs would have been entitled. It is important to note that the trial court's conclusion was not that the plaintiffs were entitled to 30% of 203 acres at $12.00 per acre, but rather, "the sum of $500.00, which amount would compensate the plaintiffs for their 30% share of the farm income they were entitled to under the farm lease."

■ Under these facts we conclude that the trial court's award of $500.00 is well within the evidence, and not inconsistent with the findings made by the court. This court upon appeal will not disturb a trial court's conclusions of law where the conclusions are not wholly inconsistent with findings made, and where upon review of the evidence it is found that additional findings based on unrefuted evidence could have been made to more fully support the court's conclusions.

Did the court err in denying injunctional relief? The findings made by the court on this point are as follows:

### IV.

That before constructing any drainage ditch, the Barnes County Highway Engineer circulated a petition in the general vicinity of Goose Lake, said petition requesting that the intersection be cleared of water. Said petition, however, was not circulated in accordance with the drainage law, Chapter 61–21 of the North Dakota Century Code and there were no further proceedings to establish a legal drain under the aforesaid law.

### V.

That before constructing the drain, there was no coordination between any other townships over which the water

would pass and there were no proceedings instituted by the defendant under Section 24–06–26 and Section 24–06–26.1 of the North Dakota Century Code.

## VI.

That there was no existing legal drain established under Chapter 61–21 of the Code in the vicinity of Goose Lake.

## VII.

That the plaintiffs' .predecessor in interest, Elsie B. Jalbert, did not consent to the digging of any drainage ditch at Goose Lake nor were there any proceedings by the defendants to condemn any of the property for drainage purposes.

## VIII.

That the defendant constructed a ditch varying from four to eight feet in width and from zero to six feet in depth from the south end of Goose Lake to a coulee bed which lay approximately 500 feet to the south of the southern boundary of Goose Lake. Upon reaching the coulee bed, the defendant also dredged out the coulee bed for a short distance to the east so that the water from Goose Lake would flow more efficiently. The ditch was started on July 1, 1969 and was completed on July 7, 1969.

It is conceded by the defendant, Barnes County, that the ditch that was constructed was not in compliance with either Chapter 61–21 of the North Dakota Century Code dealing with drainage projects under the authority of a county drainage board, nor was the construction in compliance with Chapter 24–06, North Dakota Century Code, dealing with ditches to drain highways under the authority of the board of county commissioners or board of township supervisors. The defendant simply contends that the landowners in the vicinity of where the ditch was constructed all consented to the construction of the ditch

through a petition that was filed with the township board and county commissioners, and that the water that was drained out of Goose Lake was directed into a natural drainway and under the reasonable use doctrine that this court adopted in the case of Jacobsen v. Pedersen, 190 N.W.2d 1, this was a permissible drainage.

The defendant in his argument has overlooked that portion of this court's holding in Jacobsen v. Pedersen, supra, which interprets Section 61–01–22, N.D.C.C. Section 61–01–22 reads as follows:

"Any person, public or private corporation, proposing to drain waters from a pond, slough or lake, which impounds waters gathered therein and drained from an area comprising eighty acres or more into a natural watercourse, as defined by section 61–01–06, or into a draw or natural drainway, before constructing a ditch or facility for the purpose of such drainage shall submit to the state water conservation commission an application for a permit to do so. If sixty per cent or more of the watershed or drainage area of such watercourse, draw or natural drainway is embraced within the boundaries of a water conservation and flood control district, the state water conservation commission shall refer the application to the board of commissioners of such water conservation district for consideration and approval. Such permit shall not be granted until an investigation shall disclose that the quantity of water which will be drained from the pond, slough or lake, as the case may be, will not exceed the capacity of such watercourse, draw or drainway to carry, and will not flood lands of lower proprietors. If such investigation shall show that the proposed drainage will cause such watercourse or drainway to overflow and flood the lands of lower landowners, the board of commissioners of the water conservation and flood control district or the state water conservation commission, as the case may be, shall not issue a permit until flowage easements

are obtained from owners of lands which might be burdened with the flood waters of such watercourse, draw or drainway. Such flowage easements shall be filed for record in the office of the register of deeds of the county or counties in which such lands are situated. An owner of land proposing to drain the waters from such pond, slough or lake into a watercourse or natural drainway shall undertake and agree to pay the expenses incurred in making the required investigation. The provisions of this chapter shall not be construed to limit or restrict the establishment of drains by a board of county commissioners or by a township, and shall not apply to any county which has a board of drain commissioners, or to any drain constructed under the supervision of a state or federal agency.

"Any person or corporation draining, or causing to be drained, the waters of a pond, slough or lake, which impounds waters thereinto from a watershed or drainage area comprising eighty acres or more, into a watercourse without first securing a license or permit to do so, as provided by this chapter, shall be liable for all damage sustained by any person caused by draining such pond, lake or slough, and shall be deemed guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars."

This court in Jacobsen v. Pedersen, supra, held that landowners upon whose land a lake is located which impounds waters gathered therein and drained from eighty acres or more, may not drain such lake until they have complied with the provisions of Section 61–01–22, North Dakota Century Code. It is conceded that Goose Lake that was drained to a certain level by the defendant covers an area of more than 80 acres and therefore Section 61–01–22, North Dakota Century Code is clearly applicable. The fact that Barnes County did the draining rather than the owners is immaterial, since the statute is quite clear when it states, "Any person, public or private corporation, proposing to drain waters . . . shall submit to the state water conservation commission an application for a permit to do so. * * *" No such permit was submitted to the state water conservation commission. Section 61–01–22, North Dakota Century Code, was enacted to prevent precisely what occurred in this case. The lake was drained without thoroughly investigating what effect the water would have downstream along the natural drainway. It is undisputed that the water from Goose Lake flooded part of plaintiffs' land. The plaintiffs are clearly entitled to an injunction to restrain the defendant from continuing the drain until such time that Section 61–01–22 has been complied with.

This court has repeatedly held that the granting or the denying of an injunction is within the sound discretion of the trial court, and its ruling will not be reversed on appeal unless there has been an abuse of this discretion. However, where a statute has been enacted for the protection of the public, and where a continued violation of the statute threatens to injure a person's property it is no longer a matter of discretion as to whether compliance with the statute will be enforced.

We therefore conclude that the trial court erred when it denied injunctional relief. Accordingly, we will reverse that part of the judgment denying injunctional relief and will direct that the trial court's judgment be modified to provide that the defendant be enjoined from draining Goose Lake until Section 61–01–22, North Dakota Century Code, has been complied with and that the plaintiffs be granted a mandatory injunction against the defendant requiring the defendant to fill in as much of the ditch as necessary to prevent any drainage below the level that existed prior to construction of the ditch.

For reasons stated in this opinion, that part of the judgment awarding damages in the sum of $500.00 to the plaintiffs is af-

firmed, and that part of the judgment denying injunctional relief is reversed and the case is remanded to the district court with directions for it to order injunctional relief in conformity with this opinion.

STRUTZ, C. J., and ERICKSTAD and TEIGEN, JJ., concur.

PAULSON, J., deeming himself disqualified did not participate; ADAM GEF-REH, District Judge of the Third Judicial District, sitting in his stead.

KNUDSON, ·Judge (concurring specially).

I concur in the result reached by the majority that injunctional and mandatory relief should be granted, and I also concur with the majority that the plaintiffs are entitled to damages, but in an amount greater than that awarded by the majority. I would grant judgment awarding damages of $2,436.00.

I do not agree with Syllabus paragraphs 1, 2 and 3 for the reason that these express law contrary to the statutes and the previous opinions of this Court.

This appeal is here on specifications of error that the judgment entered is not supported by the findings of fact. The appeal is not here on a demand for trial de novo.

We have held in numerous decisions that the evidence cannot be reviewed unless the appellant demands a trial de novo. Jones v. Boeing Co., 153 N.W.2d 897 (N.D. 1967); Northern Improvement Company v. Pembina Broadcasting Company, 153 N. W.2d 97 (N.D.1967); W. T. Jennings Lumber Company v. O'Callaghan, 143 N. W.2d 654 (N.D.1966).

And where no demand for trial de novo was made, the Supreme Court is limited to determine whether the findings of fact supported the judgment, and could not consider errors relating to matters not appearing on the judgment roll. N.D.C.C. § 28–27–32. Spicer v. Hamilton, 116 N.W.2d 651 (N.D.1962); Hovland v. Hovland, 104 N.W.2d 6 (N.D.1960); Park Board of City of Williston v. Schumacher, 77 N.W.2d 826 (N.D.1956); Swanston v. Swanston Equipment Company, 74 N.W.2d 452 (N.D.1956).

The majority have erred in reviewing the evidence under these rules of this Court even for the limited purpose of determining the sufficiency of the findings to support the Court's conclusions.

Where no demand for trial de novo has been made, the Supreme Court cannot consider the evidence, but is required to deem all questions of fact correctly decided. N. D.R.C.1943 § 28–2732; Swanston v. Swanston Equipment Company, *supra*.

Conclusions of law are not based on any evidence in the case; the findings of fact are the basis of such conclusions. Markus v. Poulson, 37 S.D. 328, 158 N.W. 406 (1916); Kupfer v. Biehn, 41 S.D. 163, 169 N.W. 514 (1918).