MEDICAL ARTS CLINIC, P.C., a North Dakota Professional Corporation, Plaintiff and Appellee

v.

FRANCISCAN INITIATIVES, INC., a Colorado Corporation, Defendant, Third–Party Plaintiff and Appellee

v.

Allen C. HOBERG and Trinity Medical Center, Third–Party Defendants and Appellants.

TRINITY MEDICAL CENTER, Applicant and Appellant

v.

MEDICAL ARTS CLINIC, INC. and St. Joseph's Hospital, Respondents and Appellees.

Civ. Nos. 940297, 940198.

Supreme Court of North Dakota.

May 9, 1995.

Jon W. Backes (argued), McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff, respondent and appellee Medical Arts Clinic, P.C.

Leo F.J. Wilking (argued), Nilles, Hansen & Davies, Ltd., Fargo, for defendant, third-party plaintiff and appellee Franciscan Initiatives, Inc.

John C. Kapsner (argued), Kapsner & Kapsner, Bismarck, for respondent and appellee St. Joseph's Hosp.

Edward E. Erickson (argued), Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for third-

party defendant and appellant Allen C. Hoberg.

Daniel S. Kuntz (argued), Zuger Kirmis & Smith, Bismarck, and Robert J. Lamont (no appearance), Lamont & Skowronek, Minot, for third-party defendant, applicant and appellant Trinity Medical Center.

LEVINE, Justice.

We consolidate two appeals from two different district court judgments because they involve interrelated issues about discovery procedures in administrative proceedings. *See Matter of Estate of Hansen*, 458 N.W.2d 264 (N.D.1990).

Trinity Medical Center and Administrative Hearing Officer Allen C. Hoberg appeal from a district court judgment, the Honorable Gary A. Holum, which prohibited Hoberg from enforcing a discovery order and from imposing discovery sanctions against Franciscan Initiatives in an administrative proceeding. Trinity also appeals from a district court judgment, the Honorable Gerald H. Rustad, which denied Trinity's application under N.D.C.C. § 28–32–09(7) for an order directing Medical Arts Clinic and St. Joseph's Hospital to produce information for the same administrative proceeding.

 We hold that hearing officers have statutory authority to make initial administrative discovery decisions, including the resolution of trade-secret claims. We also hold that, after administrative remedies have been exhausted, the hearing officer's decision on those trade-secret claims is subject to judicial review in an appeal from a final agency decision, an application for enforcement under N.D.C.C. § 28–32–09(7), or, in the limited circumstances of this case, a writ of prohibition. We further hold that judicial review of the hearing officer's trade-secret decision is limited by the abuse-of-discretion standard. We reverse both district court judgments and remand for proceedings consistent with this opinion.

I

Franciscan applied under N.D.C.C. ch. 23–17.2 for a certificate of need to construct a medical office building adjacent to St. Joseph's in Minot. Franciscan and Medical Arts executed a lease agreement in which Medical Arts agreed to be the principal tenant in the building. Other prospective tenants included physicians employed by Franciscan's sister corporation, St. Joseph's. The North Dakota State Health Council, under the auspices of the State Department of Health and Consolidated Laboratories, conditionally approved Franciscan's application, subject to petition for reconsideration. Trinity, a competitor of Medical Arts and St. Joseph's, petitioned the Health Council under N.D.C.C. § 23–17.2–11 for reconsideration of Franciscan's application.

The State Health Officer requested appointment of an independent hearing officer, and the Office of Administrative Hearings designated Hoberg as hearing officer for the administrative proceeding. Hoberg approved Trinity's written petition for discovery of information from Franciscan, St. Joseph's, and Medical Arts. *See* N.D.C.C. § 28–32–09(5); N.D.A.C. § 98–02–02–06(1). Hoberg also approved Trinity's written petition for subpoenas for production of documentary evidence from Medical Arts and St. Joseph's, neither of whom were parties in the administrative proceedings. *See* N.D.C.C. § 28–32–09(2); N.D.A.C. § 98–02–02–07. Franciscan, St. Joseph's and Medical Arts provided Trinity with certain information, but refused to answer some of Trinity's discovery requests, asserting a trade-secret privilege under N.D.R.Evid. 507. St. Joseph's and Medical Arts did not seek a protective order from Hoberg, *see* N.D.A.C. § 98–02–02–06(7), and did not ask him to modify or quash the subpoenas. *See* N.D.A.C. § 98–02–02–07. Trinity then applied to the district court under N.D.C.C. § 28–32–09(7) for an order enforcing the administrative subpoenas issued by Hoberg to Medical Arts and St. Joseph's. That application was ultimately heard by Judge Rustad on March 3, 1994.

Meanwhile, Trinity requested Hoberg to compel Franciscan to produce certain tenant-specific lease information about the building, and Franciscan sought a protective order, asserting the requested information was a privileged trade secret. On December 28, 1993, Hoberg issued a discovery order granting Trinity's motion to compel Franciscan to

produce the tenant-specific lease information and denying Franciscan's motion for a protective order. Hoberg concluded

"Whether Franciscan intends to offer the entire lease as evidence or not, it is relevant and discoverable. Franciscan should not be allowed to claim a privilege as to these documents because they are essential to a determination of the relevant issues in this matter. To withhold the information would be an injustice to the full disclosure and open discussion attendant to the certificate of need laws. The full terms of the lease agreement and related documents must be set forth and subject to examination at the hearing."

Claiming its tenant-specific lease information was privileged, Medical Arts sued Franciscan in district court to enjoin it from disclosing the information to Trinity. Franciscan did not oppose Medical Arts' request, instead, asking the court to rule "as may be just and equitable in the circumstances." After an evidentiary hearing, Judge Holum ruled that the tenant-specific lease information was a trade secret not necessary to resolve the issues raised in Franciscan's application for a certificate of need. Judge Holum enjoined Franciscan from disclosing the tenant-specific lease information to Trinity.

Franciscan then asked Hoberg to vacate or to modify the administrative discovery order. Hoberg refused, concluding that the injunction did not control the administrative proceeding, because: (1) it did not restrict or limit the hearing officer, who was not a party to that action, and (2) the proper method for district court review of an administrative discovery order was by appeal from the final agency decision, or by application for enforcement under N.D.C.C. § 28–32–09(7).

Franciscan then brought a third-party complaint against Trinity and Hoberg in the action before Judge Holum, seeking to prohibit Hoberg from enforcing the administrative discovery order. Franciscan alleged that, by refusing to recognize Medical Arts' trade-secret claim, Hoberg acted illegally and in excess of the power and authority delegated to a hearing officer. Judge Holum ruled that

"By failing to adhere to this Court's recognition of a privilege for trade secret information under Rule 507 of the North Dakota Rules of Evidence, as claimed by Medical Arts Clinic, by ignoring the Court's orders ... which prohibited Franciscan from disclosing the financial data at issue, and by refusing to relieve Franciscan from the duty of complying with his discovery order, Hoberg acted in an unlawful manner and in excess of his statutorily delegated powers and authority."

Judgment was entered enjoining Hoberg from ordering Franciscan to disclose Medical Arts' tenant-specific lease information and from imposing any sanctions against Franciscan for its failure to disclose the information in the administrative proceeding.

Meanwhile, on March 3, 1994, Judge Rustad held an evidentiary hearing on Trinity's application under N.D.C.C. § 28–32–09(7) for an order enforcing the administrative subpoenas issued to Medical Arts and St. Joseph's. Except for certain minor items, Judge Rustad denied Trinity's application, concluding that the requested information constituted privileged trade secrets under N.D.R.Evid. 507. Judgment was entered denying Trinity's application for enforcement of the subpoenas.

While both district court actions were pending, Hoberg held an administrative hearing on Franciscan's application for a certificate of need. On May 24, 1994, the Health Council adopted Hoberg's recommendation to continue the administrative proceeding pending final disposition of the discovery and evidentiary issues in the two district court actions, because "a complete and meaningful decision" could not be reached without evidence that was not in the record.

Trinity and Hoberg have appealed from the injunction issued by Judge Holum, and Trinity has appealed from the judgment by Judge Rustad.

II

Franciscan, St. Joseph's, and Medical Arts have moved to dismiss both appeals on the ground that the Fifty-fourth Legislative Assembly's enactment of Senate Bill 2460,

which repeals the certificate of need law effective August 1, 1995, has made the appeals moot.

▆ We do not give advisory opinions, and if issues raised on appeal have become moot, we will generally dismiss the appeal. *E.g., Gosbee v. Bendish,* 512 N.W.2d 450 (N.D.1994). An appeal is moot when an appellate court is unable to provide effective relief because of a lapse of time, or the occurrence of related events. *E.g., Bolinske v. North Dakota State Fair Association,* 522 N.W.2d 426 (N.D.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 197 (1995). However, an appeal is not moot if the controversy is one of great public interest and involves the authority and power of public officials, or is capable of repetition, yet evading review. *Bolinske, supra; Matter of Contempt of Grajedas,* 515 N.W.2d 444 (N.D. 1994); *Gosbee, supra; Walker v. Schneider,* 477 N.W.2d 167 (N.D.1991). Public interest means more than the interest of a particular locality; it means an interest that affects the legal rights or liabilities of the public at large. *Gosbee, supra; Grajedas, supra; Walker, supra.*

▆ We need not decide the effect of the repeal of the certificate of need law on the status of pending applications, because we conclude these appeals involve issues of great public interest and are not moot. The Separation of Powers provides the context for these appeals. Our system of separate but equal branches of government with its checks and balances, one branch over the other, sometimes needs fine tuning and these cases highlight the disruptive disharmony between branches that may occur when the calibration of the checks and balances goes out of kilter. At issue here is the scope of a hearing officer's authority over discovery in proceedings before an "administrative agency," part of the executive branch of "state" government, N.D.C.C. § 28–32–01(1), as well as the procedures for, and scope of, judicial review of administrative discovery rulings. These questions have statewide ramifications not only for administrative practice, but also for the relationship between the executive and judicial branches of state government and affect more than the interest of a partic-

ular locality. *Compare Gosbee, supra, with Grajedas, supra,* and *Walker, supra.* We conclude that these appeals involve issues of great public interest and are not moot.

### III

Trinity and Hoberg assert that Hoberg has statutory authority to issue a discovery order requiring Franciscan, Medical Arts and St. Joseph's to produce information which Hoberg found was relevant and necessary to determine the merits of Franciscan's application for a certificate of need. They argue that Judge Holum erred in prohibiting Hoberg from enforcing the administrative discovery order against Franciscan and from sanctioning Franciscan. They also contend that judicial review of administrative discovery decisions is limited. Medical Arts and Franciscan respond that a hearing officer who incorrectly decides a claim of privilege exceeds its authority and injunctive relief is their only adequate remedy. They further contend that judicial review of administrative discovery decisions is plenary.

### A

#### INJUNCTIVE RELIEF AGAINST PUBLIC OFFICIALS

▆ Our analysis begins with the propriety of the injunction prohibiting the hearing officer from enforcing its discovery order against Franciscan. In order to be entitled to injunctive relief, generally, a party must show that no adequate remedy at law exists and that irreparable injury will result if relief is not granted. *E.g., Olson v. Cass County,* 253 N.W.2d 179 (N.D.1977).

We have considered the appropriateness of injunctive remedies against public officials on several occasions. *See Tooley v. Alm,* 515 N.W.2d 137 (N.D.1994); *Transportation Division of Fargo Chamber of Commerce v. Sandstrom,* 337 N.W.2d 160 (N.D.1983); *Shark Brothers, Inc. v. Cass County,* 256 N.W.2d 701 (N.D.1977); *Olson, supra; Barr v. Barnes County Board of Commissioners,* 194 N.W.2d 744 (N.D.1972); *Rynestad v. Clemetson,* 133 N.W.2d 559 (N.D.1965); *Viestenz v. Arthur Township,* 78 N.D. 1029, 54 N.W.2d 572 (1952); *Chester v. Einarson,*

76 N.D. 205, 34 N.W.2d 418 (1948); *City of Fargo v. Sathre*, 76 N.D. 341, 36 N.W.2d 39 (1949); *State ex rel. Linde v. Packard*, 32 N.D. 301, 155 N.W. 666 (1915); *State ex rel. Ladd v. District Court of Cass County*, 17 N.D. 285, 115 N.W. 675 (1908). We have upheld injunctive remedies against public officials in some circumstances. *Viestenz, supra; Rynestad, supra; Barr, supra; Linde, supra; Ladd, supra*. In our recent decisions, however, we have explained the interrelationship of the requirement of an adequate legal remedy with the doctrine of exhaustion of remedies and clarified that the circumstances justifying an injunctive remedy against public officials are narrowly limited. *Tooley, supra; Sandstrom, supra; Shark Brothers, supra; Olson, supra.*

In *Sandstrom, supra*, we affirmed the dismissal of an action to enjoin the Public Service Commission from increasing freight rates because the plaintiffs had failed to follow the administrative procedure required by statute for challenging the rate increase before the Commission. We attributed a pragmatic rationale for honoring the principle of exhaustion of administrative remedies:

" 'We do not favor or encourage, nor can we sustain, bifurcated self-induced or self-initiated procedures, one in the administrative process and one in the judicial process covering the same legal questions.

" 'If such bifurcated procedures were encouraged or sustained, it would create duplication, and uncertainty, and waste manpower [sic] and money, with no appreciable result, and all without improving the administration of justice. If one side of a proceeding were permitted to proceed both in the administrative channels and the judicial channels at the same time the other side could also resort to the same procedure. The result would be endless confusion, which we can ill afford.' "

*Sandstrom, supra*, 337 N.W.2d at 163, *quoting Shark Brothers, supra*, 256 N.W.2d at 705–06. Exhaustion of administrative remedies thus provides a more efficient and eco-nomical system. It also encourages administrative decision makers to explain the basis for their decisions and perhaps, most important, provides courts with the benefit of their expertise in such matters in the event of judicial review. *See, e.g., Montana–Dakota Utilities Co. v. Public Service Comm'n*, 431 N.W.2d 276 (N.D.1988); *Montana–Dakota Utilities Co. v. Public Service Comm'n*, 413 N.W.2d 308 (N.D.1987).

In *Olson, supra*, the plaintiffs did not pursue their statutory right to appeal from a Board of County Commissioners' decision to install a drainage culvert, but, instead, sued the County to enjoin the proposed installation of the culvert. We held that the plaintiffs were barred from seeking injunctive relief, because their statutory right to appeal, not a collateral attack for injunctive relief, provided an adequate judicial remedy for reviewing the Board's decision.

We distinguished several earlier drainage cases in which we had upheld injunctive relief against public officials, because there was no adequate remedy other than injunctive relief to compel a governmental entity to comply with drainage statutes. *Barr, supra; Rynestad, supra; Viestenz, supra*. In each of those cases, the factors necessitating injunctive relief replicate the requirements for a writ of mandamus under N.D.C.C. §§ 32–34–01 and 32–34–02.[1] *See Tooley, supra*, (affirming dismissal of mandamus action, because the claimant's right to appeal Workers' Compensation Bureau decision was an adequate legal remedy, which had not been exhausted, and claimant had not shown a clear legal right to have the Bureau perform certain acts).

In *Olson, supra*, we also distinguished *Ladd, supra*, a case in which we held that, if there is no adequate legal remedy and a threat of irreparable harm, injunctive relief is appropriate to determine whether a public official's acts are in excess of, or without, authority. The circumstances supporting injunctive relief in *Ladd* parallel the criteria for a writ of prohibition, which "arrests the

---

1. Under N.D.C.C. §§ 32–34–01 and 32–34–02, a writ of mandamus is appropriate if "there is not a plain, speedy, and adequate remedy in the ordinary course of law" and "may be issued ... to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty."

proceedings of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction," and "there is not a plain, speedy, and adequate remedy in the ordinary course of law." N.D.C.C. §§ 32–35–01, 32–35–02. *See also Linde, supra* (original writ of prohibition to restrain Tax Commissioner from exceeding authority).

Our decisions illustrate that exhaustion of remedies is a fundamental requirement in administrative proceedings. *Tooley, supra; Sandstrom, supra; Shark Brothers, supra; Olson, supra.* Implicit in those decisions is the principle that the doctrine of separation of powers requires those who seek judicial review of administrative matters to first exhaust their administrative remedies. Those decisions also recognize that, if no remedy is authorized by law and irreparable harm will result, judicial relief is available against public officials to prohibit them from acting in excess of, or without, jurisdiction, *Linde, supra, Ladd, supra,* or to compel them to perform an act that the law requires. *Tooley, supra; Barr, supra; Rynestad, supra; Viestenz, supra. Cf. Investment Rarities, Inc. v. Bottineau County Water Resource Dist.,* 396 N.W.2d 746 (N.D. 1986) (although there was no statutory authority for appeal, administrative determination by State Engineer could be reviewed by court through special proceedings such as certiorari, mandamus, or prohibition).

In this case, Franciscan and Medical Arts sought to prohibit the hearing officer from enforcing its administrative discovery order. They alleged that the hearing officer exceeded its authority by refusing to recognize Medical Arts' trade-secret claim and that they had no other adequate remedy. Their allegations and requested relief effectively mirror the requirements for a writ of prohibition under N.D.C.C. §§ 32–35–01 and 32–35–02. *See Linde, supra; Ladd, supra.* We hold that, under the limited circumstances when there is no other adequate remedy and a threat of irreparable harm, a writ of prohibition may be sought to prohibit a hearing officer from enforcing an administrative discovery decision. *See Tooley, supra* (declining to hold that mandamus is never available to compel the Bureau to perform an act that the law specifically requires it to perform). The propriety of granting that relief, however, requires analysis of a hearing officer's authority in administrative discovery proceedings, and the procedures for judicial review of administrative discovery decisions.

## B

## HEARING OFFICER'S AUTHORITY IN ADMINISTRATIVE DISCOVERY

In 1991, the Legislature created the Office of Administrative Hearings, 1991 N.D.Sess. Laws ch. 637, and also amended several provisions of the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, to incorporate into administrative proceedings the concept of an independent hearing officer. 1991 N.D.Sess. Laws ch. 342. Except for certain enumerated administrative proceedings, "all hearings of administrative agencies under chapter 28–32 ... must be conducted by the office of administrative hearings in accordance with the administrative hearings provisions of chapter 28–32 and any rules adopted pursuant to chapter 28–32." [2] N.D.C.C. § 54–57–03(1). The provisions for designation of an administrative hearing officer are applicable to a petition for a public hearing for reconsideration of a certificate of need. N.D.C.C. §§ 23–17.2–11, 54–57–03(1).

Section 28–32–09(1), N.D.C.C., authorizes an administrative hearing officer to "issue subpoenas, discovery orders, and protective orders in accordance with the North Dakota Rules of Civil Procedure." *See Berger v. State Highway Commissioner,* 394 N.W.2d 678 (N.D.1986). However, before discovery in an administrative proceeding may be undertaken, the party seeking discovery "must first show good cause, by written petition, and obtain the written approval of the agency or the presiding hearing officer." N.D.C.C.

**2.** Under N.D.C.C. § 54–57–05, the Director of Administrative Hearings has adopted rules for administrative hearings. *See* N.D.A.C. Article 98–02, Uniform Rules of Administrative Practice and Procedure. Those administrative rules cover prehearing, hearing, and posthearing practice and procedure.

§ 28–32–09(5). Section 98–02–02–06(1), N.D.A.C., also outlines similar safeguards to control discovery in an administrative proceeding:

"a party ... seeking to undertake discovery shall first submit a written petition for approval to conduct discovery to the hearing officer. The petition must identify the type of discovery sought, must name the person to be examined, or identify with particularity the documents or property to be inspected, as the case may be, and must explain how the information sought is relevant to the issues. If the hearing officer finds that the requesting party has demonstrated that the information sought is relevant to the issues in dispute, is reasonable in scope, is needed for the proper presentation of the party's case, and is not for the purposes of delay, the request must be approved. The hearing officer shall recognize all privileged information or communications which are recognized by law."

Before a subpoena to compel a witness to produce documentary evidence will be issued, a party must "first show general relevance and reasonable scope of the evidence sought, by written petition, and obtain the written approval of the agency or the person presiding." N.D.C.C. § 28–32–09(2). *See also* N.D.A.C. § 98–02–02–07 (hearing officer shall issue a subpoena only upon written petition of a requesting party).

These provisions authorize a hearing officer to approve discovery of information that is relevant and necessary for resolving issues in an administrative proceeding while providing safeguards against unlimited discovery. The Rules of Civil Procedure, which are incorporated into administrative discovery proceedings by N.D.C.C. § 28–32–09(1), further define the scope of administrative discovery to include any matter, not privileged, which is relevant to the subject matter involved in a pending proceeding. N.D.R.Civ.P. 26(b)(1). *See* N.D.C.C. § 28–32–06(2) (evidentiary rules of privilege apply to all stages of an administrative proceeding); N.D.A.C. § 98–02–02–06(1) (hearing officer shall recognize all privileged information or communications which are recognized by law). If a party or a nonparty from whom discovery is sought

claims privilege, a hearing officer may issue a protective order precluding disclosure of the privileged information or requiring disclosure in a designated way. N.D.R.Civ.P. 26(c)(7); N.D.A.C. § 98–02–02–06(7). The hearing officer may also quash or modify a subpoena. N.D.A.C. § 98–02–02–07.

■ If, after exhausting these administrative remedies, a party does not succeed in its claim of privilege and refuses to comply with a discovery order, the hearing officer and agency may draw an adverse inference that evidence not produced is unfavorable to the nonproducing party. N.D.A.C. § 98–02–02–06(6). *See* N.D.R.Civ.P. 37. *See also Colgate–Palmolive Co. v. Dorgan*, 225 N.W.2d 278 (N.D.1974); *Krueger v. North American Creameries*, 75 N.D. 264, 27 N.W.2d 240 (1947).

The foregoing provisions endow the hearing officer with quasi-judicial authority to control the method and manner of discovery in administrative proceedings, just as a trial court ultimately controls discovery in a civil action. They give the hearing officer initial decision-making responsibility to determine whether requested information is relevant and necessary to resolve contested issues in an administrative proceeding. The prohibition of discovery of privileged information, coupled with the hearing officer's authority to initially rule on discovery requests and to issue protective orders, necessarily authorize a hearing officer to determine if requested information is, in fact, a privileged trade secret.

■ A trade-secret claim is not absolute or self-executing, *N.S.P. v. Public Service Commission*, 502 N.W.2d 240 (N.D.1993), and a hearing officer's refusal to sustain the claim does not mean the hearing officer acted in excess of, or without, authority in deciding the issue. *See Olson, supra.* Jurisdiction is the authority or power to decide a matter and does not depend on whether a decision is right or wrong. *Olson, supra. See First Western Bank & Trust v. Wickman*, 527 N.W.2d 278 (N.D.1995). In *Olson, supra*, we held that a Board of County Commissioners had statutory authority to render a decision on the installation of a culvert, regardless of

whether that decision was right or wrong, and that an appeal, not a collateral attack for injunctive relief, was the appropriate method to challenge the correctness of the Board's decision.

 We hold that, regardless of the correctness of a hearing officer's answers to administrative discovery questions, the Legislature has conferred statutory authority upon the hearing officer to decide those questions, including trade-secret claims. Our analysis thus turns to the procedures for judicial review of a hearing officer's trade-secret decision.

## C

### JUDICIAL REVIEW OF HEARING OFFICER'S TRADE–SECRET DECISION

 In this case, the hearing officer granted Trinity's motion to compel Franciscan to disclose tenant-specific lease information and denied Franciscan's trade-secret claim, concluding that the information was essential to the resolution of relevant issues in the administrative proceeding. If Franciscan does not disclose the information, the Administrative Agencies Practice Act allows judicial review of Franciscan's trade-secret claim in two ways: (1) an application by Trinity to the district court under N.D.C.C. § 28–32–09(7) [3] for enforcement of the discovery order, or (2) an appeal by Franciscan from the final agency decision after an adverse evidentiary inference against Franciscan. These procedures ordinarily provide an adequate remedy for judicial review of Franciscan's claim in the administrative process and must be exhausted. *See Tooley, supra; Sandstrom, supra; Shark Brothers, supra; Olson, supra.*

However, if Franciscan takes steps to disclose information that Medical Arts, a nonparty to the administrative proceeding, claims is a trade secret, the procedure for judicial review of Medical Arts' claim, is not as clear. Medical Arts must first exhaust its administrative remedies so the hearing officer has an opportunity to specifically rule on its claim. *Sandstrom, supra.* Those administrative remedies include asking the hearing officer to issue a protective order, or to quash or modify a subpoena. If, after Medical Arts has exhausted its administrative remedies, the hearing officer does not sustain Medical Arts' trade-secret claim, Medical Arts has no assurances that Franciscan will not disclose the information before judicial review is available. Disclosure by Franciscan under those circumstances would impose upon Medical Arts the impossible task of seeking a remedy that would " 'unring a bell.' " *Phoenix Assurance Co. of Canada v. Runck,* 317 N.W.2d 402, 408 (N.D.1982), *cert. denied,* 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982). *See Burlington Northern v. North Dakota District Court,* 264 N.W.2d 453, 455 (N.D.1978) (disclosures cannot be " 'unmade' ").

In *Public Service Commission v. Eighth Judicial District Court,* 107 Nev. 680, 818 P.2d 396 (1991), the Nevada Supreme Court considered a similar dilemma in the context of a request for disclosure of certain price terms in contracts between several utilities and a claim that the price terms were trade secrets. The Nevada Public Service Commission ordered disclosure of four of the price terms, finding they were not trade secrets and, even if they were, they should be disclosed because it would be unfair to ratepayers to keep them confidential. The court approved an "interlocutory" judicial review of the agency decision in the form of a petition for extraordinary relief:

"With respect to the usual evidentiary questions resolved by the Commission, judicial review following a final order of the Commission provides an adequate avenue of relief. Interlocutory review of such decisions would be disruptive of the administrative process, and counter-productive.

---

**3.** Section 28–32–09(7) says:
"Subpoenas, discovery orders, protective orders, and other orders issued under this section may be enforced by applying to any judge of the district court for an order requiring the attendance of a witness, the production of all documents and objects described in the subpoena, or otherwise enforcing an order. Failure of a witness or other person to comply with the order of the district court is contempt of court which is punishable by the district court, upon application."

Review of the decision that privileged information must be disclosed, on the other hand, must occur before the information is disclosed to be effective. Because no effective relief is available in the ordinary course of the law, the only possible remedy is through a petition for extraordinary relief. *Cf. Clark v. District Court,* 101 Nev. 58, 692 P.2d 512 (1985) (extraordinary writ issued to prevent the district court from requiring the disclosure of information protected by the attorney-client privilege)."

*Id.* 818 P.2d at 400.

The court's decision parallels our previously discussed caselaw allowing, in limited circumstances, judicial review of decisions by public officials through special proceedings for writs of certiorari, mandamus, or prohibition. *Tooley, supra; Investment Rarities, supra.* The Nevada court relied on a prior Nevada case similar to our decisions in which we have invoked our supervisory jurisdiction to review trial court orders compelling discovery of information in civil actions. *Reems v. Hunke,* 509 N.W.2d 45 (N.D.1993); *Polum v. North Dakota District Court,* 450 N.W.2d 761 (N.D.1990); *Heartview Foundation v. Glaser,* 361 N.W.2d 232 (N.D.1985); *Burlington Northern, supra.* In these cases, we have exercised our original supervisory jurisdiction over discovery issues, because an order compelling discovery was not appealable and there was no recourse except to comply with the discovery order or to be held in contempt of court. *Reems, supra; Polum, supra; Heartview, supra.*

■ We apply the rationale of those cases to administrative discovery. We hold that if the impact of an order compelling disclosure of claimed trade secrets cannot be "unmade" and, after exhaustion of administrative remedies, there is no other recourse for an entity like Medical Arts, a writ of prohibition may be sought for judicial review of the hearing officer's trade-secret decision. *Tooley, supra; Investment Rarities, supra. See Barr, supra; Rynestad, supra; Viestenz, supra.* As we explain, however, the scope of judicial inquiry under that type of proceeding, as well as an application under N.D.C.C. § 28–32–09(7) or an appeal from a final agency decision, is limited.

**D**

**SCOPE OF JUDICIAL REVIEW OF HEARING OFFICER'S TRADE–SECRET DECISION**

■ In these appeals, the discovery issue involves a trade-secret claim under N.D.R.Evid. 507, which says:

"A person has a privilege, which may be claimed by him or his agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by him, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice. If disclosure is directed, the court shall take such protective measures as the interest of the holder of the privilege and of the parties and the interests of justice require."

The rule's explanatory note indicates that a trade secret is "a limited privilege to protect from disclosure that group of confidential facts necessary to the internal operation of a business entity," and the "instances in which the invocation of this privilege is justified are few." Rule 507, N.D.R.Evid., does not grant an absolute right to refuse to disclose trade secrets; rather, it provides a conditional privilege if nondisclosure will not result in an injustice. *N.S.P. v. Public Service Commission,* 502 N.W.2d 240 (N.D. 1993).

■ In civil actions involving trade-secret claims, a trial court has discretion in ruling on discovery requests and protective orders. *E.g., In re Remington Arms Co., Inc.,* 952 F.2d 1029 (8th Cir.1991); *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965). *See* 2 Weinstein's Evidence ¶ 508[03] (1995); 4 Moore's Federal Practice ¶ 26.11(4) (1995). In civil actions, an appellate court reviews a trial court's discovery decisions regarding a trade-secret claim under the abuse-of-discretion standard. *Remington Arms, supra; Centurion Industries, Inc. v. Warren Steurer & Associates,* 665 F.2d 323 (10th Cir.1981); *Hartley Pen Co. v. United States District*

*Court,* 287 F.2d 324 (9th Cir.1961). In other contexts, we have also reviewed a trial court's discovery decisions under the abuse-of-discretion standard. *DeWitz by Nuestel v. Emery,* 508 N.W.2d 334 (N.D.1993); *Carlson v. Carlson,* 472 N.W.2d 228 (N.D.1991); *Guskjolen v. Guskjolen,* 391 N.W.2d 639 (N.D. 1986).

■ In these appeals, however, the authority to make initial trade-secret decisions has been vested in the hearing officer, acting for an administrative agency in the executive branch of government. Generally, the doctrine of separation of powers restricts judicial review of decisions by the executive branch of government. *Pulkrabek v. Morton County,* 389 N.W.2d 609 (N.D.1986); *Barnes County v. Garrison Diversion Conservancy District,* 312 N.W.2d 20 (N.D.1981); *Shaw v. Burleigh County,* 286 N.W.2d 792 (N.D. 1979); *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D.1979); *Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau,* 171 N.W.2d 104 (N.D.1969).

Although the Nevada Supreme Court did not explicitly refer to separation of powers in *Public Service Commission v. Eighth Judicial District, supra,* 818 P.2d at 400, it held that judicial review of the agency's trade-secret discovery decision was limited to whether the agency "exceeded its jurisdiction in ordering disclosure of the documents at issue or, assuming no excess of jurisdiction, whether the Commission manifestly abused its discretion." That standard corresponds to our decisions describing the scope of judicial review of an administrative decision under the separation-of-powers doctrine.

As we explained in *Barnes County, supra,* the doctrine of separation of powers requires courts to exercise restraint in reviewing administrative decisions. In that case, we considered an "appeal" from a decision by the Garrison Diversion Conservancy District under N.D.C.C. § 61–24–17, which gave the district court "original jurisdiction ... to hear and determine the cause de novo without a jury." We construed that language to require limited judicial review and prohibit a district court from substituting its judgment for that of the agency. We held that the scope of a court's inquiry was limited to

determining if the agency acted within its jurisdiction; the agency made a mistake as to the applicable law; the agency acted arbitrarily, oppressively, or unreasonably; and the agency's determination was supported by the evidence. *See also Shaw, supra* (appeal from decision of board of county commissioners to district court "shall be heard and determined de novo"; held to require limited judicial review to determine if the Board's decision was arbitrary, capricious, or unreasonable).

In *City of Fargo v. Ness,* 529 N.W.2d 572 (1995), we recently considered the scope of judicial inquiry under N.D.C.C. § 40–47–11(2), which allows a decision by a city's governing body on a request for a variance from a zoning ordinance to be judicially reviewed by certiorari. We held that the statute authorized expanded judicial review by certiorari, beyond the question of jurisdiction, to include whether the city's decision was arbitrary, capricious, or unreasonable.

Those same principles of deference apply to judicial review in appeals from final agency decisions under the Administrative Agencies Practice Act. *Power Fuels, supra; Geo. E. Haggart, supra.* In that context, we recently considered the role of a hearing officer in ruling on the admissibility of evidence in an administrative hearing. *Knudson v. Director, North Dakota Department of Transportation,* 530 N.W.2d 313 (1995). We said that hearing officers have discretion to regulate the course of administrative proceedings and held that the abuse-of-discretion standard applied to a hearing officer's evidentiary ruling. Although *Knudson* did not involve a hearing officer's ruling on discovery issues or trade-secret claims, our decision illustrates the deference accorded to hearing officers' evidentiary rulings under the separation-of-powers doctrine.

■ The scope of judicial inquiry for applications for enforcement of administrative discovery orders, protective orders and subpoenas under N.D.C.C. § 28–32–09(7), is also limited. In proceedings to enforce an administrative subpoena, a court's inquiry is limited to whether: (1) the subpoena is within the statutory authority of the agency; (2) the

information sought is reasonably relevant to the inquiry of the administrative proceeding; (3) the subpoena is reasonably specific; and (4) the subpoena is not unduly broad or burdensome. *See United States v. Florida Azalea Specialists,* 19 F.3d 620 (11th Cir. 1994); *Burlington Northern Railroad Co. v. Office of Inspector General,* 983 F.2d 631 (5th Cir.1993); *United States v. Westinghouse Elec. Corp.,* 788 F.2d 164 (3rd Cir.1986); *E.E.O.C. v. Ocean City Police Dept.,* 787 F.2d 955 (4th Cir.1986); *Iowa City Human Rights Commission v. Roadway Express, Inc.,* 397 N.W.2d 508 (Ia.1986); *Matter of Agerter,* 353 N.W.2d 908 (Minn.1984).

Section 28–32–09(7), N.D.C.C., does not define the scope of judicial review on applications for enforcement of discovery orders or protective orders. However, like the language of the statutes at issue in *Barnes County, supra,* and *Shaw, supra,* N.D.C.C. § 28–32–09(7) must be construed in harmony with the doctrine of separation of powers to require limited judicial inquiry. *See Matter of Adoption of K.A.S.,* 499 N.W.2d 558 (N.D. 1993) (statutes must be construed to avoid interpretations of doubtful constitutionality).

▉▉▉ These authorities are persuasive support for the principle of limited judicial review of administrative discovery decisions regarding trade secrets. We hold that judicial review of administrative discovery decisions regarding trade secrets, whether in the context of an application for enforcement under N.D.C.C. § 28–32–09(7), an appeal from a final agency decision, or in the limited circumstances where a writ of prohibition is available, is restricted by the doctrine of separation of powers. In those situations, a reviewing court may not insert itself into the agency's administrative role. Rather, the hearing officer, like a trial judge in a civil action, is responsible in the first instance for exercising the wide range of his or her discretion in ruling on discovery issues, including trade-secret claims, and those rulings are subject to judicial review under the narrow

standard of abuse of discretion. *See City of Fargo v. Ness,* 529 N.W.2d 572 (1995) (abuse of discretion occurs if a decision is arbitrary, capricious, or unreasonable, or if it misinterprets or misapplies the law).

## IV

▉▉▉ Here, in the district court case prohibiting the hearing officer from enforcing its discovery order against Franciscan, Judge Holum ruled that the hearing officer "acted . . . in excess of his statutorily delegated powers and authority." However, as we have held, the Legislature has conferred upon the hearing officer the statutory authority to rule on discovery issues and trade-secret claims. As we explained in *Olson, supra,* merely because the hearing officer did not allow Franciscan's trade-secret claim does not mean the hearing officer acted without, or in excess of, its authority to decide that issue. To the extent the district court held that the hearing officer exceeded its statutory authority, we hold the court erred.

▉▉▉ Moreover, the hearing officer has ruled on Franciscan's trade-secret claim, and Franciscan has an adequate remedy for judicial review of the hearing officer's decision—an application by Trinity under N.D.C.C. § 29–28–09(7), or an appeal by Franciscan from the final agency decision after an adverse inference. However, the entity effectively seeking judicial review of its trade-secret claim in this action, Medical Arts, has not sought a protective order from the hearing officer, and the hearing officer has not ruled on Medical Arts' trade-secret claim in the context of the issues relevant to the administrative proceeding. The doctrine of exhaustion of remedies requires a party, or other from whom discovery is sought to exhaust available administrative procedures so the hearing officer can exercise his statutory authority and rule on any claims of privilege in the context of issues relevant to the administrative proceeding.[4] *Tooley, supra;*

4. We note that, in Senate Bill 2122, the Fifty-fourth Legislative Assembly amended N.D.C.C. § 28–32–09(1) to say:

"Any hearing officer may issue subpoenas, discovery orders, and protective orders in accordance with the North Dakota Rules of Civil Procedure. *A motion to quash or modify, or any other motion relating to subpoenas, discovery, or protective orders must be made to the hearing officer. The hearing officer's rulings on these motions may be appealed under section*

*Sandstrom, supra; Shark Brothers, supra; Olson, supra.* We reverse the judgment prohibiting the hearing officer from enforcing his discovery order and remand to the district court with instructions to remand to the hearing officer for proceedings consistent with this opinion.

 In the application to the district court, Judge Rustad, for enforcement of the administrative subpoenas under N.D.C.C. § 28–32–09(7), Medical Arts and St. Joseph's did not first seek from the hearing officer a protective order or an order modifying or quashing the subpoenas, and the hearing officer has not had an opportunity to rule on their respective trade-secret claims. Because Medical Arts and St. Joseph's did not exhaust their administrative remedies, the district court should have remanded the matter to the hearing officer for his consideration. Accordingly, we reverse the judgment denying Trinity's application for enforcement of the subpoenas under N.D.C.C. § 28–32–09(7), and we remand to the district court with instructions to remand to the hearing officer for proceedings consistent with this opinion.[5]

SANDSTROM, J., and WILLIAM F. HODNY and MAURICE R. HUNKE, District Judges, concur.

VERNON R. PEDERSON, Surrogate Judge, WILLIAM F. HODNY and MAURICE R. HUNKE, District Judges, sitting in place of VANDE WALLE, C.J., and MESCHKE and NEUMANN, JJ., disqualified.

PEDERSON, Surrogate Judge, dissenting.

The majority opinion, here, is loaded with discussions of, and answers to, many legal questions which I would enthusiastically use in any appropriate circumstance. Unfortunately, in this case I think that they are entirely hypothetical and, for the good of the judicial system, we should try to avoid pitfalls that abound when we evaluate principles that have only, at best, incidental relativity to controlling issues before the court.

The jugular vein in this dispute was made obvious to me when, during oral argument, counsel responded to my question as to whether a hearing officer can decline to recommend the grant of a certificate of need when the applicant has failed to supply "essential facts" to support the issuance of a certificate of need. I heard no objection, from any counsel, to my question nor to the answer given. Why would an opponent to the grant of the certificate ever urge the applicant to supply those "essentials" and thus become qualified?

Ordinarily, when an applicant for a driver's license refuses to demonstrate that he or she can drive, the examiner's role is clearly to deny the license—not to arm-wrestle the applicant. If it were true in this case, as it is claimed, that the certificate of need could not have been granted without the subpoenaed "essential" documents, a summary rejection of the application would have ended the matter. Complicity in the behind-the-scenes disputes in the Minot hospital wars should be avoided by the State Health Council, by the independent hearing officer and by this court.

I would dismiss all appeals.

---

28–32–15 *after issuance of the final order by the agency.*"

The underscored language confirms the requirement for exhaustion of administrative remedies.

5. We also believe judicial and administrative economy would be best served by a single proceeding before the hearing officer and, if necessary, before the district court. *Cf. First National Bank of Belfield v. Burich,* 367 N.W.2d 148, 155 (N.D.1985) (purpose of compulsory counterclaim rule is "to promote judicial economy by preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.").